# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

**TRINITY YACHTS, LLC**                                        **PLAINTIFF**

v.                                    **CAUSE NO. 1:11CV507-LG-JMR**

**THOMAS RUTHERFOORD, INC.,**
**and MARSH & McLENNAN AGENCY, LLC**        **DEFENDANTS**

## MEMORANDUM OPINION AND
## ORDER CONCERNING DEFENDANTS'
## MOTIONS FOR PARTIAL SUMMARY JUDGMENT

**BEFORE THE COURT** are the Motion for Partial Summary Judgment on the Issue of Choice of Law [75], the Motion for Partial Summary Judgment on the Issue of Duty [77], the Motion for Partial Summary Judgment on the Issue of Damages [79], and the Motion for Partial Summary Judgment on the Application of La. Rev. Stat. 9:5606 [81] filed by the defendants Thomas Rutherfoord, Inc., and Marsh & McLennan Agency, LLC (hereinafter collectively referred to as "Rutherfoord"). The plaintiff, Trinity Yachts, LLC, alleges that its domestic insurance broker, Rutherfoord, permitted excessive, undisclosed commissions to be charged on Trinity's account. In its Motions, Rutherfoord argues: (1) Louisiana law should be applied in this case; (2) Rutherfoord did not breach any duties owed to Trinity; (3) Trinity has failed to demonstrated that it suffered damages as a result of Rutherfoord's conduct; and (4) Trinity's claims are perempted by La.

Rev. 9:5606. Upon reviewing the submissions of the parties and the applicable law, the Court finds that Rutherfoord's Motions concerning application of Louisiana law and Louisiana's peremption statute should be denied. However, Rutherfoord's Motion concerning duty is granted, and its Motion concerning damages is moot.

## FACTS

Trinity, a Louisiana limited liability company, builds yachts and commercial vessels. (Compl. at 3, ECF No. 3; John Siben Dep. at 31, ECF No. 87-10). Until 2005, Trinity operated its business at a shipyard in New Orleans, Louisiana, but when Hurricane Katrina destroyed its shipyard, Trinity quickly purchased a new shipyard in Gulfport, Mississippi. (Wayne Bourgeois Aff., ECF No. 86-1; Charles de Cuir Dep. at 170-71, 172, ECF No. 86-2; John Siben Dep. at 11-12, ECF No. 87-10). The New Orleans shipyard was restored sufficiently to be utilized by Trinity, but the majority of its work takes place in Gulfport, where most of its employees and its administrative offices are now located. (Wayne Bourgeois Aff., ECF No. 86-1; Charles de Cuir Dep. at 172, ECF No. 86-2).

The nature of Trinity's business requires extensive and complex insurance coverage. Typically, it retains a retail or domestic broker that is located within the United States, and the retail broker negotiates with a

Lloyd's of London certified broker to obtain insurance through Lloyd's underwriters. (Robert Waterson Dep. at 12-13, ECF No. 88-5). At the time Hurricane Katrina struck, Trinity was utilizing Arthur J. Gallagher Risk Management Services, Inc., as its domestic/retail broker and Newman Martin and Buchan (NMB) as its London/wholesale broker. (John Dane Dep. at 20, ECF No. 86-4). Gallagher and NMB were paid a commission that was based on the premiums charged by the Lloyd's underwriters. (*Id.* at 21).

Trinity's premiums rose significantly following the hurricane, and thus, the commissions also rose significantly. (Wayne Bourgeois Dep. at 24, ECF No. 24; John Dane Dep. at 22, ECF No. 86-4). Trinity's chief executive officer, John Dane, became concerned about the high premiums and commissions. (John Dane Dep. at 22, ECF No. 86-4). He claims that he asked Charles de Cuir, Rutherford's Maritime Division Director, to provide him with an insurance quote from Rutherfoord with all commissions carved out of the premiums and replaced by a flat fee. (*Id.* at 39-40). De Cuir presented a quote for coverage that included a flat broker's fee of $167,000, and de Cuir told Dane in an email that commissions would be stripped from the premiums. (de Cuir 12-23-2005 email, ECF No. 78-7). Dane assumed that the flat $167,000 fee was shared by Rutherfoord and a London broker, Bowood. (John Dane Dep. at 41, ECF No. 86-4). Dane compared the

Rutherfoord quote with a quote received from Gallagher that reflected a flat fee of $200,000, split equally between Gallagher and NMB. (*Id.* at 39-42).

In 2006, 2007, and 2008, Trinity and Rutherfoord entered into letter agreements setting forth the brokerage services that Rutherfoord would perform and the fees that Trinity would pay for those services. (2006, 2007, 2008 Letter Agreements at 1, ECF Nos. 78-1, 78-2, 78-3). The 2007 fee charged by Rutherfoord was $260,937, and the 2008 fee was $385,500. (de Cuir Dep. at 216-17, 219-20, ECF No. 86-2).

In 2009, Trinity's chief financial officer asked de Cuir to seek out competition for its insurance coverage, but de Cuir claimed that other options were not available. (John Siben Dep. at 51-55, 61, 77, ECF No. 87-10). Nevertheless, another retail broker, Lockton, presented a lower quote than the Rutherfoord quote, and Trinity decided to utilize Lockton as its new retail broker and NMB as its new London broker. (*Id.*)

Since Trinity's insurance policies remain in effect the entire period of time that a yacht is under construction, Trinity continued to receive invoices from Rutherfoord and Bowood even after it retained Lockton for its new policies. (*Id.* at 81-83). Trinity representatives were attempting to reconcile the invoices and sought the assistance of Lockton in deciphering the amounts due. (*Id.* at 81-84). In 2011, Trinity learned that Bowood, the London broker

utilized by de Cuir and Rutherfoord, had received full commissions in addition to the flat fee paid to Rutherfoord. (*Id.* at 84). De Cuir has admitted that he never asked Bowood what commissions it was receiving or attempted to negotiate those commissions, although he admits that he could have done so. (Charles de Cuir Deposition at 121-22, 126-27, 133, ECF No. 86-2).

Trinity filed a lawsuit against Rutherfoord in the United States District Court for the Eastern District of Louisiana on October 14, 2011. (La. Compl., ECF No. 76-1). In the Louisiana Complaint, Trinity stated that it is a limited liability company organized under the laws of Louisiana that has its principal place of business in Gulfport, Mississippi. (*Id.* at 1). Trinity stated that the Louisiana court had personal jurisdiction over Rutherfoord since the claims asserted in the lawsuit had arisen out of Rutherfoord's activities in Louisiana. (*Id.* at 2). It also claimed that Rutherfoord acted as an insurance agent for policies covering property and operations in Louisiana and caused Trinity to suffer damages in Louisiana. (*Id.*) Rutherfoord filed a Motion to Dismiss the Louisiana lawsuit, arguing that the Louisiana peremption statute, La. Rev. Stat. 9:5606, barred Trinity's lawsuit. (Defs.' Mot. to Dismiss, ECF No. 82-2). Trinity voluntarily dismissed its Louisiana lawsuit before a ruling could be entered on the Motion to Dismiss and filed the present lawsuit on December 22, 2011.

In its Complaint filed in this lawsuit, Trinity asserted that the lawsuit had arisen out of Rutherfoord's actions within Mississippi, that the insurance policies at issue covered property and operations in Mississippi, and that Rutherfoord caused Trinity to suffer damages in Mississippi. (Compl. at 2, ECF No. 1). Trinity also added the following statement to its Mississippi Complaint: "Trinity did not discover or learn of the excessive charges of Rutherfoord until Spring of 2011." (*Id.* at 5). Trinity has alleged breach of contract and breach of fiduciary duty claims against Rutherfoord. (*Id.* at 6-7). The bases for these claims are Rutherfoord's alleged failure to fully and accurately disclose commissions charged for Trinity's insurance policies and Rutherfoord's alleged failure to act in Trinity's best interest while negotiating premiums and commissions. (*Id.*) Trinity seeks the following damages: the return of excess commissions charged, extra-contractual damages, profits, costs, expenses, and attorneys' fees. (*Id.* at 8).

## DISCUSSION

A motion for summary judgment may be filed by any party asserting that there is no genuine issue of material fact that the movant is entitled to prevail as a matter of law on any claim. Fed. R. Civ. P. 56. The movant bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the

absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Celotex Corp.*, 477 U.S. at 324-25. The non-movant may not rest upon mere allegations or denials in its pleadings but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

## I. CHOICE OF LAW AND APPLICATION OF LOUISIANA PEREMPTION STATUTE

Rutherfoord argues that Louisiana law should be applied in the present lawsuit, and that the following peremption statute bars Trinity's lawsuit:

> No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

La. Rev. Stat. Ann. § 5606. Trinity counters that Mississippi law, which

provides for a three-year statute of limitations, applies in the present case.[1] *See* Miss. Code Ann. § 15-1-49. As a result, a conflict of laws exists regarding the statute of limitations applicable to the present lawsuit.

In cases where subject matter jurisdiction is based on diversity of citizenship, the court must apply the choice of law rules of the forum state. *Ellis v. Trustmark Builders, Inc.*, 625 F.3d 222, 225 (5th Cir. 2010). Thus, Mississippi's choice of law rules apply in the present case. "Mississippi's choice-of-law test consists of three steps: '(1) determine whether the laws at issue are substantive or procedural; (2) if substantive, classify the laws as either tort, property, or contracts; and (3) look to the relevant section of the Restatement (Second) of Conflict of Laws.'" *Id.* The parties agree that the Louisiana peremption statute is substantive law. *See Conwill v. Marsh & McLennan Cos., Inc.*, No. 1:08cv1511-LG-JMR, 2010 WL 2400423 at *2 (S.D. Miss. June 11, 2010) (citing *Wayne v. Tenn. Valley Auth.*, 730 F.2d 392, 400-01 (5th Cir. 1984)). Trinity has filed contract and tort claims against Rutherfoord. The Mississippi Supreme Court has held that "in actions interpreting contract provisions which arise from a tort committed by one of the parties, the appropriate classification is under contract." *Zurich Amer.*

---

[1] In the alternative, Trinity asserts that the discovery rule contained in the Louisiana peremption statute applies in the present case.

*Ins. Co. v. Goodwin*, 920 So. 2d 427, 433 (Miss. 2006). The Mississippi courts have held that the factors listed in the Restatement should be considered:

> (1) the needs of the interstate and international systems; (2) the relevant policies of the forum; (3) the relevant policies of other interested states and the relevant interest of those states in the determination of a particular issue; (4) the protection of justified expectations; (5) the basic policies underlying the particular field of law; (6) certainty, predictability, and uniformity of results; (7) ease and determination in application of law to be applied.

Restatement (Second) of Conflicts of Laws § 6. Section 188 of the Restatement (Second) of Conflict of Laws provides additional guidance:

> (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.
> (2) In the absence of an effective choice of law by the parties . . ., the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>     (a) the place of contracting,
>     (b) the place of negotiation of the contract,
>     (c) the place of performance,
>     (d) the location of the subject matter of the contract, and
>     (e) the domicil[e], residence, nationality, place of incorporation and place of business of the parties. These contacts are to be evaluated according to their relative importance with respect to the particular issue.
> (3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189-199 and 203.

Restatement (Second) of Conflicts of Laws § 188. In cases involving brokers' services contracts, § 196 of the Restatement (Second) of Conflicts of Laws is

often instructive. This section provides that the law of the state in which the services called for in the contract are performed should be applied, but that section is only helpful where "the major portion of the services called for by the contract is to be rendered in a single state and it is possible to identify this state at the time the contract is made." Restatement (Second) of Conflicts of Laws § 196 cmt. a. The place where the services are to be rendered "enjoys greatest significance when the work is to be more or less stationary." Restatement (Second) of Conflicts of Laws § 196 cmt. b.

The letter agreements entered into between Trinity and Rutherfoord do not contain a choice of law provision or specifically provide the state in which the services are to be provided. Rutherfoord is a Virginia corporation with its principal place of business in Virginia. (Defs.' Resp. Req. Admis, ECF No. 86-6). It was not registered to do business in Louisiana during the negotiation, formation, and performance of the letter agreements. (*Id*.) All of the evidence before the Court indicates that Trinity is a Louisiana corporation with its principal place of business in Mississippi. (Wayne Bourgeois Aff., ECF No. 86-1). The letter agreements were negotiated using electronic communication. (Defs.' Resp. 2d Set Interrog., ECF No. 87-7). During these negotiations, Trinity's representatives were located in Mississippi, and Wayne Bourgeois, Trinity's chief operating officer, was located in Gulfport

when he signed the letter agreements. (Wayne Bourgeois Aff., ECF No. 86-1). Rutherfoord performed services pursuant to the letter agreements in England, Louisiana, Mississippi, Florida, Pennsylvania, Texas, Georgia, Virginia, and North Carolina. (Defs.' Resp. 2d Set Interrog., ECF No. 87-7). Substantially all meetings between the parties occurred in Mississippi, and de Cuir frequently visited Mississippi while the letter agreements were in effect. (Wayne Bourgeois Aff., ECF No. 86-1). The location of the subject matter of the contracts is not relevant or identifiable in the present case, since the letter agreements at issue are services contracts.

Rutherfoord, however, relies on the choice of law clauses contained in the insurance agreements procured on behalf of Trinity, which contain Louisiana addresses for Trinity and provide: "This policy shall be governed by the Laws of the State of Louisiana, U.S.A." (Bowood policies, ECF Nos. 76-3, 76-4, 76-5, 76-6, 76-7, 76-8). It also presents paperwork from the Louisiana Secretary of State and Mississippi Secretary of State reflecting that Trinity is a Louisiana company. Finally, Rutherfoord relies on the Louisiana Complaint filed by Trinity. Rutherfoord asserts, "Unless Louisiana substantive law is applied to this case, plaintiffs will be permitted to forum shop and dismiss cases filed in Louisiana that have substantial Louisiana contacts to avoid the peremptive periods contained in La. Rev. Stat. 9:5606."

Contrary to Rutherfoord's assertions, the choice of law provisions in those policies merely state that the *policies* should be governed by Louisiana, not the relationship between Rutherfoord and Trinity. The policy language and policies themselves are not at issue in this lawsuit, and Rutherfoord was not even a party to the policies. Trinity's argument that Restatement (Second) of Conflicts of Laws § 193 applies in the present case is likewise incorrect, since that section only pertains to the validity of and rights created by certain kinds of insurance policies. Each of the letter agreements entered into by Rutherfoord and Trinity provide, "This agreement constitutes the entire agreement between the parties hereto with respect to the subject matter hereof and supersedes all prior and written discussions and understandings." (Letter Agreements at 6, ECF Nos. 78-1, 78-2, 78-3). Thus, it would be improper for the Court to impose external choice of law provisions on the parties.

Rutherfoord's argument as to the existence of "substantial Louisiana contacts" is also without merit. The only connections that Louisiana has to this lawsuit are the fact that Trinity is a Louisiana corporation and a small portion of its business is conducted there. Trinity's state of incorporation is less significant here, because the relationship between Rutherfoord and Trinity arose after Hurricane Katrina forced Trinity to move its headquarters

to Mississippi. There is no genuine issue of material fact that Trinity's business was centered in Mississippi during the negotiation and performance of the letter agreements at issue. Both Mississippi and Virginia, the principal places of business of the parties, have more significant relationships with the letter agreements at issue than Louisiana. Between Virginia and Mississippi, the strongest relationship lies with Mississippi, since the parties' interactions, meetings, and negotiations were centered here.

As for Trinity's Louisiana Complaint, Rutherfoord has not produced any legal authority or doctrine that supports its argument that Louisiana law should be applied, because a previous Complaint was filed and voluntarily dismissed there. Trinity did not assert that Louisiana law applied in the Complaint; it merely stated that venue was proper and that personal jurisdiction existed. Trinity did not wait for the court to impose adverse rulings in the Louisiana case, but voluntarily dismissed the case before any rulings were entered. The Fifth Circuit has held:

> The plaintiff has an "absolute right" to a Rule 41(a)(1) dismissal, and "[t]he effect of [a Rule 41(a)(1)] dismissal is to put the plaintiff in a legal position as if he had never brought the first suit." The plaintiff "suffers no impairment beyond his fee for filing." Stated differently, the plaintiff is free to return to the dismissing court or other courts at a later date with the same claim.

*Harvey Specialty & Supply, Inc. v. Anson Flowline Equip. Inc.*, 434 F.3d 320

(5th Cir. 2005). As a result, Rutherfoord's Motions for Partial Summary Judgment seeking application of Louisiana law and Louisiana's preemption statute must be denied.

## II. BREACH OF DUTY

### A. TRINITY'S BREACH OF CONTRACT CLAIM

In the alternative, Rutherford argues that it fulfilled every duty owed to Trinity, since it is undisputed that Trinity received the coverage requested and provided other services set forth in the letter agreements. Rutherford asserts that the letter agreements did not purport to reflect the fees charged by Bowood and that "Rutherfoord did not undertake a duty to provide the 'cheapest' protection of Trinity's corporate assets." (Defs.' Mem. at 8, ECF No. 78).

In its rebuttal, Rutherfoord argued that Trinity has abandoned its breach of contract claim, since it failed to respond to Rutherfoord's arguments in its response. However, a motion for summary judgment cannot be granted simply because there is no opposition. Factual controversies are resolved in favor of the non-moving party, but only when there is an actual controversy; that is, when both parties have submitted evidence of contradictory facts. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994). Ultimately, the movant has the burden of establishing the absence of a genuine issue of

material fact and, unless he has done so, the court may not grant the motion, regardless of whether any response was filed. *Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985).

In its Complaint, Trinity stated that Rutherfoord has violated its contractual duties "in that the commissions that Trinity was charged for placement of insurance policies were not fully and accurately disclosed." (Compl. at 6, ECF No. 1). Trinity also alleged that Rutherfoord failed to accurately account for profits received as a result of the contract. (*Id.*) The Court has reviewed the letter agreements and has not located any provision that required Rutherfoord to disclose Bowood's commissions to Trinity. The letter agreements only discussed the fees charged by Rutherfoord. There is no evidence in the record that Rutherfoord shared in the commissions received by Bowood. As a result, the Court finds that Rutherfoord is entitled to summary judgment as to Trinity's breach of contract claim.

### B. BREACH OF FIDUCIARY DUTY

Rutherfoord argues that Trinity's breach of fiduciary duty claim must be dismissed, because it did not owe a fiduciary duty to Trinity. In the alternative, Rutherfoord argues that it exceeded its duties owed to Trinity.

The Mississippi Supreme Court has held:

> Although every contractual agreement does not give rise to a fiduciary relationship, in Mississippi, such a relationship may exist under the following circumstances: (1) the activities of the parties go beyond their operating on their own behalf, and the activities [are] for the benefit of both; (2) where the parties have a common interest and profit from the activities of the other; (3) where the parties repose trust in one another; and (4) where one party has dominion or control over the other.

*Univ. Nursing Assoc., PLLC v. Phillips*, 842 So. 2d 1270, 1274 (¶9) (Miss. 2003). When the relationship between the parties is merely an arms-length business transaction, the Mississippi courts have refused to recognize a fiduciary relationship. *Id.* at 1275 (¶12). "One of the key elements of a fiduciary relationship is 'the fiduciary's control of the supervised party's property,' and that 'things of value such as land, monies, a business, or other things of value must be possessed or managed by the dominant party.'" *Id.* at 1275 (¶ 13).

Trinity asserts that it was not sophisticated in insurance matters and that it placed significant trust in Rutherfoord to handle its insurance needs. It relies on the following language in the letter agreements:

> [Rutherfoord] is committed to act as extension [sic] of the Company's management team, bringing new ideas and approaches to ensure that your Insurance and Risk Management Program provides comprehensive and cost effective protection of your corporate assets. To act in the role of Broker even if we are the licensed agent of one of the companies with whom your business is placed. As your Broker, we will represent you to the

> markets that we mutually agree should handle your business and act as your advocate in program placement, claims handling and other brokerage services.

(2006, 2007, 2008 Letter Agreements at 1, ECF Nos. 78-1,78-2, 78-3).

Nevertheless, the business relationship between Rutherfoord and Trinity was an arms-length transaction between two sophisticated businesses. There is no evidence that Rutherfoord exercised dominion or control over Trinity or its property. Trinity was free to terminate the letter agreements with Rutherfoord, and in fact, it eventually did so. The relationship between Trinity and Rutherfoord was far different than that in cases where the Mississippi courts recognized a fiduciary relationship. *See generally Lowery v. Guar. Bank & Trust Co.*, 592 So. 2d 79 (Miss. 1991) (discussing cases in which a fiduciary relationship was found); *see also Phillips*, 842 So. 2d at 1274-75 (¶10) (discussing nurse's required participation in employer's nurse practice plan). Since the Court finds that no fiduciary duty existed, Rutherfoord is entitled to summary judgment as to Trinity's breach of fiduciary duty claims.

## III. DAMAGES

It is not necessary for the Court to consider Rutherfoord's Motion for Partial Summary Judgment concerning damages, since the only claims filed

by Trinity in its Complaint – breach of contract and breach of fiduciary duty – have been dismissed. As a result, the Motion concerning damages is moot.

## CONCLUSION

Rutherfoord's Motions for Partial Summary Judgment seeking the application of Louisiana law and Louisiana's peremption statute are denied. Rutherfoord's Motion for Partial Summary Judgment regarding duty is granted, and its Motion for Partial Summary Judgment concerning damages is moot. Since Rutherfoord's Motion concerning duty has disposed of all of Trinity's substantive claims, Rutherfoord is entitled to a final judgment in its favor.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion for Partial Summary Judgment on the Issue of Choice of Law [75] and the Motion for Partial Summary Judgment on the Application of La. Rev. Stat. 9:5606 [81] filed by the defendants Thomas Rutherfoord, Inc., and Marsh & McLennan Agency, LLC, are **DENIED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that the Motion for Partial Summary Judgment on the Issue of Duty [77] filed by the defendants Thomas Rutherfoord, Inc., and Marsh & McLennan Agency, LLC, is **GRANTED**. Thomas Rutherfoord, Inc., and Marsh & McLennan Agency,

LLC, are entitled to judgment as a matter of law as to all of the claims filed by Trinity Yachts, LLC. A separate judgment will be entered in accordance with Fed. R. Civ. P. 58(a).

**IT IS, FURTHER ORDERED AND ADJUDGED** that the Motion for Partial Summary Judgment on the Issue of Damages [79] filed by Thomas Rutherfoord, Inc., and Marsh & McLennan Agency, LLC, is **MOOT**.

**SO ORDERED AND ADJUDGED** this the 5th day of March, 2013.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE