IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**TRINITY YACHTS, LLC**                                                                           **PLAINTIFF**

**v.**                                  **CAUSE NO. 1:11CV507-LG-JMR**

**THOMAS RUTHERFOORD, INC.,**
**and MARSH & McLENNAN AGENCY, LLC**             **DEFENDANTS**

<u>**ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION TO STRIKE, EXCLUDE
AND/OR LIMIT TESTIMONY OF PLAINTIFF'S EXPERT WITNESS**</u>

**BEFORE THE COURT** is the Motion to Strike, Exclude and/or Limit the Testimony of Plaintiff's Expert Witness, Geoffrey Hughes [97] that was filed by the defendants Thomas Rutherfoord, Inc., and Marsh & McLennan Agency, LLC (hereinafter collectively referred to as "Rutherfoord"). Rutherfoord asks the Court to strike or limit Hughes' proposed expert testimony, because (1) Trinity's attorney assisted Hughes in the drafting of his report; (2) Hughes offers inadmissible legal opinions; (3) Hughes' opinions are unreliable, biased, and incorrect; and (4) Hughes' damages calculations are unverified, unsubstantiated, and inaccurate. Trinity has filed a response in opposition to the Motion, and Rutherfoord has filed a reply. Upon reviewing the submissions of the parties and the applicable law, the Court finds that Rutherfoord's Motion to Exclude should be granted to the extent that Hughes offers legal opinions but denied in all other respects.

## BACKGROUND

In this lawsuit, Trinity alleges that its former insurance broker Rutherfoord permitted excessive, undisclosed commissions to be charged on Trinity's account. A complete discussion of the facts and procedural history of this case are contained in this Court's Amended Memorandum Opinion and Order concerning Defendants' Motions for Partial Summary Judgment.

Rutherfoord has filed a Motion asking the Court to exclude the opinions of Trinity's expert, Geoffrey Hughes. In his report, Hughes gave the following opinions:

> It is my professional opinion that the duty of an agent is to protect the interest of the insured. When negotiating with a London broker on behalf of the insured, when the agent is being reimbursed on a flat fee, rather than commission, it is incumbent upon the agent to insure that the commissions given to the London broker by the underwriter, part of which would normally go to the agent, are discounted. A failure to do so is a failure to protect the insured's interest as an insurance agent would be expected to do.
> Having reviewed the documents above, and based on my experience and expertise, it is my conclusion that Rutherfoord failed to protect Trinity Yachts' interest by failing to adequately negotiate the commissions to be taken and retained by Bowood . . . . In this instance, Rutherfoord failed to protect Trinity's interests.
> It is my professional opinion that the retained commissions, and in turn the total fees and commissions taken with respect to these placements, was well above that which is normal in the industry. The typical retained commission by London brokers in a marine insurance of this size is approximately 7.5%. Having reviewed the Trinity Brokerage Amounts Schedule as produced by R.K. Harrison, the commissions allowed to be retained by the London brokers in this instance ranged from 12.5% to 22.5% . . . . [T]herefore the commissions shown in that schedule were excessive when allowed to be wholly retained by the London broker, on top of a flat fee to the domestic agent.
> The damages resulting to Trinity Yachts resulting from

> Rutherfoord's failure to negotiate the retained commissions can be
> computed by comparing the actual amount of retained commissions to
> the customary amount of retained commissions which should have
> been negotiated. Based on the information I have reviewed, although I
> am unable to arrive at a precise figure due to the lack of access to
> records of actual premiums, the approximate amount of retained
> commissions appears to be $2,223,351. Had Rutherfoord negotiated
> ordinary and reasonable commission agreements, the London broker
> would have received total retained commissions of approximately
> $1,083,456. It is my opinion that failing to reduce the London brokers'
> commission, could have cost the insured approximately $1,139,886 in
> premium savings.

(Defs.' Mot., Ex. H, ECF No. 98-8).

## DISCUSSION

Rule 702 of the *Federal Rules of Evidence* establishes the following standards for determining whether expert testimony is admissible:

> (a) the expert's scientific, technical, or other specialized knowledge [must] help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony [must be] based on sufficient facts or data;
> (c) the testimony [must be] the product of reliable principles and methods; and
> (d) the expert [must have] reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The United States Supreme Court has also set forth the following non-exhaustive list of factors to consider: whether the expert's theory or technique can be or has been tested, whether it has been subjected to peer review, whether it has a known or potential rate of error or standards controlling its operation, and whether it is generally accepted in the relevant scientific community. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593 (1993). Thus, "expert testimony is admissible only if it is both relevant and reliable." *Pipitone v.*

*Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). Expert testimony is relevant if it relates to any issue in the case. *See Daubert*, 509 U.S. at 591. In order to be reliable, an expert's opinions must be based on sufficient facts or data, as well as the product of reliable principles and methods. Fed. R. Civ. P. 702(b), (c). Reliability is determined by making a "preliminary assessment of whether the reasoning or methodology underlying the testimony is . . . valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id*. at 592-93. The district court must ensure that "an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). The proponent of expert testimony must prove that the testimony is reliable by a preponderance of the evidence. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

Trinity asserts that Rutherfoord's Motion is untimely. The Court agrees. Nevertheless, the Court will consider Rutherfoord's Motion in an effort to fulfill its Court's duty to serve as a gatekeeper concerning the admissibility of expert opinions.

Rutherfoord first argues that Hughes' opinions should be excluded, because Trinity's attorney helped him prepare his report. The Sixth Circuit has addressed this issue, explaining that an attorney may provide assistance to an expert as long as "the report reflects the actual views of the expert." *United States v. Kalymon*, 541 F.3d 624, 638 (6th Cir. 2008). Furthermore, the Advisory Committee Notes

related to the 1993 amendments to Rule 26(a)(2)(B) address this issue, providing:

> Rule 26(a)(2)(B) does not preclude counsel from providing assistance to experts in preparing the reports . . . . Nevertheless, the report, which is intended to set forth the substance of the direct examination, should be written in a manner that reflects the testimony to be given by the witness and it must be signed by the witness.

*Id.* (quoting Fed. R. Civ. P. 26 advisory committee's notes). Since there is no indication that Hughes' report does not accurately reflect his own opinions, the Court finds that Rutherfoord's argument in this regard is without merit.

Rutherfoord also argues that Hughes is not qualified to opine as to the duties owed by Rutherfoord. Trinity counters that Hughes does not intend to offer testimony concerning the duty owed by insurance agents, but Hughes described the duties owed in both his report and during his deposition. The issue of whether Rutherfoord owed a duty to Trinity is a question of law. Opinions that provide legal conclusions are not helpful to the trier of fact and are therefore inadmissible. *See* Fed. R. Evid. 702; *United States v. Izydore*, 167 F.3d 213, 218 (5th Cir. 1999). Hughes' opinions are stricken to the extent that he attempts to describe the duties owed by Rutherfoord.

Rutherfoord next asserts that Hughes' opinions are unreliable, biased, and incorrect and that his damages calculations are unverified, unsubstantiated, and inaccurate. In support of these arguments, Rutherfoord relies on Hughes' deposition testimony that his opinion concerning Rutherfoord's alleged failure to protect Trinity's interest and adequately negotiate the commissions is not based on the negotiations related to any particular policy but on Rutherfoord's "general

conduct, knowing market practice at Rutherfoord's." (Hughes Deposition, Defs.' Mot., Ex. M at 121-22, ECF No. 98-13). Rutherfoord argues that Hughes' apparent failure to review the individual policy negotiations indicates that his opinions are unreliable. Nevertheless, the Rutherfoord agent who was assigned to Trinity's policies admitted that he never attempted to negotiate the commissions. (Charles de Cuir Deposition at 121-22, 126-27, 133, ECF No. 86-2). The Court finds that a failure to review commission negotiations that undisputably did not occur does not render Hughes' opinion unreliable.

Rutherfoord also argues that Hughes' opinion is unreliable, because of his "blind reliance on R. K. Harrison's document," and he did not verify all of the commissions charged. (Defs.' Mem. at 11, ECF No. 98). R. K. Harrison is the company that was formerly known as Bowood, the London broker for the insurance policies at issue. Although it is not clear from Rutherfoord's Memorandum, it appears that the "R. K. Harrison document" reflects the amounts of premiums and commissions charged on the Trinity policies. Rutherfoord has not established what other sources Hughes should have reviewed regarding the commissions charged by Bowood other than Bowood's own documents, which are now in the possession of R. K. Harrison. Furthermore, Hughes testified that he was not able to verify all of the commissions, because the documentation provided by R.K. Harrison and/or Rutherfoord did not always reflect the commissions charged.

Rutherfoord also takes issue with other statements made by Hughes during his deposition, such as a statement that the threshold for a substantial marine

insurance premium account is "like beauty. It's in the eye of the beholder" and a remark that Trinity's CEO would likely agree with his opinions concerning the Rutherfoord agent's conduct in this case. Rutherfoord also notes Hughes' admission that it is impossible to prove that Rutherfoord could have negotiated lower commissions on Trinity's behalf if it had tried to do so, and that he improperly included commissions from 2005 in his calculations.

Trinity counters that Rutherfoord's arguments concerning Hughes' opinions pertain to the weight of Hughes' testimony, not its admissibility, and that his opinions should not be excluded due to the fact that they were based on inadequate records and information provided by Rutherfoord.

The Court finds that Hughes' testimony, with the exception of his legal opinions, is admissible. He is certainly qualified to provide opinions in this case, and his opinions concerning the practices of insurance brokers and the commissions charged will be helpful to the jury. Rutherfoord's arguments are better suited for cross-examination. *Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.")

## CONCLUSION

For the foregoing reasons, the Court finds that the Motion to Exclude Geoffrey Hughes should be granted in part and denied in part.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion to Strike, Exclude and/or Limit the Testimony of Plaintiff's Expert Witness, Geoffrey Hughes [97] is **GRANTED** to the extent that he offers legal opinions, and is **DENIED** in all other respects.

**SO ORDERED AND ADJUDGED** this the 31st day of May, 2013.

*s/ Louis Guirola, Jr.*
Louis Guirola, Jr.
Chief United States District Judge